UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

FILED

MICHAEL E. KUNZ, Clerk
Dep. Clr.

| | |
|---|---|
| DONNA HUNTSMAN, on behalf of herself and a class of persons similarly situated, ) | No. |
| ) | |
| Plaintiff, ) | COMPLAINT FOR VIOLATIONS OF |
| ) | THE EMPLOYEE RETIREMENT |
| v. ) | INCOME SECURITY ACT |
| ) | |
| CIGNA CORPORATION; H. EDWARD ) | CLASS ACTION COMPLAINT |
| HANWAY; STEWART M. BELTZ; CIGNA'S ) | |
| INVESTMENT REVIEW GROUP; JANE ) | |
| DOES 1-20; JOHN DOES 1-20; and ) | |
| RICHARD ROES 1-20, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

For her Complaint against Defendants, Plaintiff alleges as follows:

## I. **NATURE OF ACTION**

1.     This is a civil enforcement action brought pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.

2.     This lawsuit concerns the CIGNA Savings and Investment Plus Plan, also referred to as the CIGNA 401(k) Plan (the "Plan"), a retirement plan established by CIGNA Corporation ("CIGNA" or the "Company") as a benefit for its employees to permit tax-advantaged savings for retirement and other long-term goals.  The Plan is a defined contribution plan covering most of CIGNA's full- and part-time employees in the United States.

3.     This class action is brought on behalf of the Plan and the participants and beneficiaries of the Plan for losses to the Plan during the Class Period (May 2, 2001, to the present) caused by the imprudent investment of Plan assets in CIGNA stock through investments in the CIGNA Stock Fund offered by the Plan, or otherwise acquired or held by the Plan during the Class Period.

4.     Plaintiff Donna Huntsman is a former employee of CIGNA and a participant in the Plan.

5.     Plaintiff's claims arise from the failure of the Defendants, who are fiduciaries of the Plan, to act solely in the interest of the participants and beneficiaries of the Plan and from the Defendants' failure to exercise the required care, skill, prudence, and diligence in administering the Plan and investing the assets of the Plan. Plaintiff alleges, *inter alia*, that the fiduciaries of the Plan, as identified and set forth herein, violated their fiduciary obligations to the Plan under §§ 404, 405, and 406 of ERISA, 29 U.S.C. §§ 1104, 1105, and 1106, by, among other things: (1) failing to prudently and loyally manage the assets of the Plan by offering CIGNA stock as an investment option for the Plan and causing the Plan to acquire and maintain shares of CIGNA stock for the Plan when such investments were imprudent and harmful to the participants of the Plan; (2) failing to provide participants with complete and accurate information sufficient to advise the participants of the true risks associated with investing in CIGNA stock in the CIGNA Stock Fund; (3) failing to properly monitor the Plan and the other fiduciaries, thereby allowing other fiduciaries of the Plan to offer CIGNA stock as an investment option through the CIGNA Stock Fund, to make and maintain investments in CIGNA stock when such investments were imprudent and harmful to the participants of the Plan, and to communicate incomplete and inaccurate information regarding CIGNA stock to participants; and (4) allowing or causing the Plan to acquire CIGNA stock for the Plan at artificially inflated share prices, which represented more than adequate consideration for such shares.

6.     Plaintiff further alleges that the Defendants' breaches of fiduciary duty in connection with the Plan's holdings and acquisition of CIGNA stock resulted in losses to the Plan which the Defendants are personally liable to make good to the Plan and its participants pursuant to §§ 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132(a)(2).

7.     Because her claims apply to the participants and beneficiaries as a whole, and because ERISA authorizes a participant such as Ms. Huntsman to sue for plan-wide relief for

breaches of fiduciary duty, Plaintiff brings this action on behalf of herself and all the participants
and beneficiaries of the Plan during the relevant period.

## II. JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§ 1331 (federal question) and the specific jurisdictional statute for claims of this type, ERISA
§ 502(e)(1), 29 U.S.C. § 1132(e)(1).     The Court has personal jurisdiction over Defendants
pursuant to Fed. R. Civ. P. 4(k).

9.     Venue is properly laid in this district pursuant to ERISA § 502(e)(2), 29 U.S.C.
§1132(e)(2), because the Plan was administered in this District, some or all of the fiduciary
breaches for which relief is sought occurred in this District, and one or more of the Defendants
may be found in this District. Venue is also proper in this district under 28 U.S.C. §1391(b) and
(c) because one or more of the Defendants resides in this District. In addition, CIGNA's
principal executive offices are located in this district and CIGNA systematically and
continuously does business in this District.

## III. PARTIES

### Plaintiff

10.     Plaintiff is a resident of Montgomery Village, Maryland.  She began working for
CIGNA on March 6, 1996.  Plaintiff was one of the approximately 45,000 people employed by
CIGNA during the Class Period alleged herein.  Plaintiff is a "participant" in the Plan within the
meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).  Plaintiff's Plan account balances have been
invested in CIGNA common stock in the CIGNA Stock Fund.

### Defendants

11.     Defendant CIGNA Corporation is a Delaware corporation with its principal place
of business located at One Liberty Place, 1650 Market Street, Philadelphia, Pennsylvania.
CIGNA and its subsidiaries are investor-owned employee benefits organizations.  CIGNA's

subsidiaries are major providers of employee benefits offered through the workplace, including healthcare products and services; group life, accident and disability insurance; retirement products and services; and investment management. At all times relevant to the Complaint, CIGNA was the sponsor of the Plan. CIGNA appointed the Corporate Benefit Plan Committee ("Benefit Plan Committee") to serve as the Named Fiduciary of the Plan, and authorized CIGNA's Chief Executive Officer ("CEO") to appoint a chairman and members of the Benefit Plan Committee, each of whom CIGNA required to be officers of CIGNA or a related company. CIGNA was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that through these activities it exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or exercised discretionary authority or discretionary responsibility in the administration of the Plan, including through the appointment of Plan fiduciaries. In addition, because the Plan's other fiduciaries, in their exercise of their individual fiduciary roles or functions with respect to the Plan, acted in the course and scope of their employment with CIGNA in the conduct giving rise to liability hereunder, CIGNA is liable for the actions of such other Defendants under the doctrine of *respondeat superior*.

12.     Defendants Jane Does 1-20 are residents of the United States, and are or were members of the Benefit Plan Committee appointed by CIGNA to be the Named Fiduciary of the Plan. As such, the Benefit Plan Committee was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or exercised discretionary authority or discretionary responsibility in the administration of the Plan, including through the appointment of Plan fiduciaries. Specifically, the Benefit Plan Committee was charged with responsibility for the management, operation, and administration of the Plan. The Benefit Plan Committee also had the authority to allocate among Benefit Plan Committee members, and to delegate to

committees, corporate departments, units, officers, and/or employees of CIGNA Corporation or related companies the managerial, operational, administrative, and/or investment responsibility for the Plan to the extent permitted by ERISA. The Benefit Plan Committee also had the authority to revoke such delegations and re-delegate at any time, and from time to time, and to appoint one or more fiduciaries, and on behalf of CIGNA, appoint one or more other named fiduciaries in addition to the Benefit Plan Committee and the Plan Administrator. The individual identities of the members of the Benefit Plan Committee currently are not known to Plaintiff. Once their identities are discovered, Plaintiff will seek leave to amend to join them under their true names.

13.    Defendant H. Edward Hanway ("Hanway") was CIGNA's Chief Executive Officer ("CEO"). CIGNA authorized Hanway to appoint a chairman and each member of the Benefit Plan Committee, and required Hanway only to appoint officers of CIGNA or related companies. Hanway, thus, was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or exercised discretionary authority or discretionary responsibility in the administration of the Plan, including through the appointment of the Benefit Plan Committee members and his accompanying duty to monitor such persons to ensure that they prudently and loyally served the interests of the participants.

14.    Defendant Stewart M. Beltz was, at all times relevant hereto, Administrator of the Plan and Assistant Vice President of CIGNA. As the Plan Administrator, Beltz was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or exercised discretionary authority or discretionary responsibility in the administration of the Plan. Beltz's fiduciary responsibilities extended to all aspects of the Plan's day-to-day administration and

management, including, without limitation, the investment of Plan assets, the designation of Plan investment alternatives, and communications with Plan participants regarding Plan assets and benefits. In the latter regard, Beltz participated in fiduciary communications by executing Plan-related documents, including CIGNA's Form 5500, Registration Statement on Form S-8 relating to shares of CIGNA Stock to be issued to Plan participants, and other Plan-related documents and communications.

15.    Defendants John Does 1-20 are residents of the United States, and are or were members of the CIGNA Investment Review Group ("IRG") during the Class Period, and in that capacity were charged with responsibility for selection of investment funds for the Plan and for monitoring the performance of the selected Plan funds. IRG members were fiduciaries of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that they exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or exercised discretionary authority or discretionary responsibility in the administration of the Plan, through, among other actions, selecting and monitoring investment funds for the Plan and appointing, monitoring, and, when appropriate, removing other Plan investment fiduciaries. The individual identities of such persons currently are not known to Plaintiff. Once their identities are discovered, Plaintiff will seek leave to amend to join them under their true names.

16.    Defendants Richard Roes 1-20 are residents of the United States and are or were senior financial and human resources officers in the Treasurer's Department of the CIGNA Financial Division and the Corporate Benefits Department of the CIGNA Human Resources and Services Division who appointed the individual members of the IRG for the purpose of selecting investment funds for the Plan and monitoring the performance of the selected funds ("Senior Appointing Officers"). The Senior Appointing Officers were fiduciaries within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that they had direct responsibility for appointing, monitoring, and, when appropriate, removing the Plan's investment fiduciaries. The individual

identities of the Senior Appointing Officers currently are not known to Plaintiff. Once their identities are discovered, Plaintiff will seek leave to amend to join them under their true names.

## IV. APPROPRIATENESS OF CLASS ACTION

17.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in her representative capacity on behalf of herself and a class ("Plan Class" or "Class") of all persons similarly situated, defined as follows:

> All participants in the Plan and their beneficiaries, excluding the Defendants, for whose accounts the fiduciaries of the Plan made or maintained investments in CIGNA stock through the CIGNA Stock Fund between May 2, 2001, and the present (the "Class Period").

18.     Plaintiff meets the prerequisites to bring this action on behalf of the Class because:

*Numerosity*. The Class consists of thousands of individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable.

*Commonality*. There are questions of law and fact common to the Class. Such common questions include, but are not limited to:

    a.     Whether Defendants breached their fiduciary obligations to the Plan and participants by causing the Plan to offer the CIGNA Stock Fund as an investment option for the Plan at a time when Defendants knew or should have known that CIGNA stock was not a prudent investment for the Plan;

    b.     Whether Defendants breached their fiduciary obligations to the Plan and participants by causing the Plan to make and maintain investments in CIGNA stock at such time as it was no longer was prudent to do so;

    c.     Whether Defendants breached their fiduciary obligations to the Plan and participants by providing incomplete and inaccurate information to participants regarding CIGNA stock, and by preventing participants from exercising independent control over investments in the CIGNA Stock Fund as a result;

    d.     Whether Defendants breached their fiduciary obligations to the Plan and participants by failing to prudently monitor the Plan's other fiduciaries, the investing decisions of the Plan, and the administration of the Plan,

such that the Plan and participants' interests were adequately protected and served;

e.  Whether CIGNA, by failing to comply with its specific fiduciary responsibilities under § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), enabled its co-fiduciaries to commit violations of ERISA and, with knowledge of such breaches, failed to make reasonable efforts to remedy the breach and is liable for the other fiduciaries' violations pursuant to §§ 405(a)(2) and (3) of ERISA, 29 U.S.C. §§ 1105(a)(2) and (3);

f.  Whether CIGNA breached its fiduciary obligations to the Plan and participants by causing the Plan to acquire shares of Company Stock at per-share prices that exceeded fair market value and represented more than adequate consideration for such shares; and

g.  Whether as a result of fiduciary breaches engaged in by Defendants the Plan and its participants and their beneficiaries suffered losses.

*Typicality*.  Plaintiff's claims are typical of the claims of the Class.

*Adequacy*.  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiff has engaged competent counsel experienced in class actions and complex litigation.

19.  This action is maintainable as a class action for the following independent reasons:

a.  Given ERISA's imposition of a uniform standard of conduct on ERISA fiduciaries, the prosecution of separate actions by individual members of the Class would create the risk of inconsistent adjudications which would establish incompatible standards of conduct for the Defendant with respect to their obligations under the Plans. Fed. R. Civ. P. 23(b)(1)(A).

b.  The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Fed. R. Civ. P. 23(b)(1)(B).

c.  The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive,

declaratory, or other appropriate equitable relief with respect to the Class as a whole. Fed. R. Civ. P. 23(b)(2).

d. Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

20. There are one or more putative or certified class action securities cases pending against CIGNA and other Defendants. The claims herein are under ERISA and related principles of federal common law and are not being asserted by the plaintiffs in those other class actions. The named plaintiffs in those class actions do not adequately represent the Plaintiff or the Class herein with respect to ERISA claims, and may be subject to defenses, stays of discovery, heightened pleading requirements, and limitations of liability under the Private Securities Litigation Reform Act, 15 U.S.C. § 77z-1(b), and other statutes and rules that do not apply to the claims asserted herein. Furthermore, the shareholder plaintiffs in the securities actions lack standing under § 502(a) of ERISA, 29 U.S.C. § 1132(a), to bring an action on behalf of the participants of the Plan for allegations of fiduciary breaches.

21. Finally, the plaintiffs in the CIGNA securities class actions cannot pursue under the federal securities laws all the relief which the Plan and its participants are entitled to obtain under §§ 502(a) and 409 of ERISA, 29 U.S.C. §§ 1132(a) and 1109. Therefore, the interests of the Plan and its participants cannot be adequately represented by the class plaintiffs in the CIGNA securities class actions.

## V. THE PLAN

**A. The CIGNA Savings and Investment Plus Plan.**

22. The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). Further, it is an "eligible individual account plan" within the meaning of ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), and also a "qualified cash or deferred

- 9 -

arrangement" within the meaning of I.R.C. § 401(k), 26 U.S.C. § 401(k). Pursuant to ERISA, the relief requested in this action is for the benefit of the Plan.

23.     Subject to Internal Revenue Service limitations, participants of the Plan were permitted to contribute up to 16 percent of their pay until January 1, 2001, and up to 25 percent of their pay thereafter – in before and after tax payroll deductions – to the Plan. Participants directed the investment of their contributions to various investment options available in the Plan.

24.     Under the terms of the Plan, the contributions to the Plan by and on behalf of the participants are held in trust by the Trustee of the Plan, Mellon Bank, and invested by the Trustee in the investment options offered by the Plan. According to the Summary Plan Description ("SPD"), dated September 9, 1999:

> All Plan assets are owned by the Trustee for the benefit of Plan participants. You have an interest in these assets, but you do not directly own any individual securities and do not have any other privileges of ownership of Plan assets . . .

25.     Most of the Plan investment options were diversified mutual funds. However, at all times relevant to the Complaint, the Plan offered as an investment option the CIGNA Stock Fund, which invests primarily in shares of CIGNA common stock. At all times relevant hereto, CIGNA stock was represented as a suitable investment for the Plan.

26.     The Plan provides that CIGNA will make matching contributions of 50 percent of any participant's contributions up to 6 percent of eligible earnings, by making contributions to the participant's accounts in the CIGNA Stock Fund. One half of the regular CIGNA match is automatically invested in the CIGNA Stock Fund; the other half is invested in the same funds selected by the Plan participant.

27.     Defendants restrict participants from transferring or reallocating the portion of the match automatically invested in the CIGNA Stock Fund to other funds in the Plan. According to the SPD, the portion of the match automatically invested in the CIGNA Stock Fund must remain

in the Fund and may not be transferred from the CIGNA Stock Fund until the participant terminates employment with CIGNA or reaches age 55, whichever occurs first.

28.    The Plan also provides that CIGNA may make a "variable match" contribution. The variable match may be up to 2 percent of a participant's eligible earnings and is automatically invested, in its entirety, in the CIGNA Stock Fund. The People Resources Committee of the Board of Directors ("Board Committee") had discretion regarding the payment of the variable match contribution to eligible employees.

29.    Defendants also restrict participants from transferring the variable match contribution out of the CIGNA Stock Fund to other funds in the Plan. The variable match contribution may not be transferred from the CIGNA Stock Fund until the participant terminates employment with CIGNA or reaches age 55, whichever occurs first.

30.    As of December 31, 2000, the Plan held over \$465 million of CIGNA stock in the CIGNA Stock Fund, a substantial portion of which could not be transferred or reallocated by participants or beneficiaries. This represented over 20 percent of the assets in the Plan at the time.

**B.    The Defendant Plan Fiduciaries.**

31.    **Named Fiduciaries.** ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).

32.    *De Facto* **Fiduciaries.** ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), but also any other persons who in fact perform fiduciary functions. ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) (stating that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets . . ..").

- 11 -

33.    Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its participants under ERISA in the manner and to the extent set forth in the Plan Document, the SPD, through their conduct, and under the Act.

34.    Instead of delegating fiduciary responsibility for the Plan to external service providers, CIGNA chose to comply with the requirements of § 402(a)(1) by internalizing the fiduciary function, and by appointing its own directors, officers, and employee to manage and administer the Plan and the Plan assets in the course and scope of their employment by CIGNA, or a subsidiary of CIGNA.

### (1)    Employer Fiduciary.

35.    CIGNA is the Plan Sponsor within the meaning of ERISA § 3(l6)(B), 29 US.C. § 1002(l6)(B).  CIGNA also appointed the Benefit Plan Committee as Named Fiduciary, and authorized the CEO to appoint of the Benefit Plan Committee a chairman and members, and required the CEO only to name CIGNA employees to the Benefit Plan Committee.  Accordingly, CIGNA exercised authority to control and manage the operation and administration of the Plan.

36.    CIGNA at all times acted through its Board of Directors and with respect to its Plan-related functions, acted through the Benefit Plan Committee.

37.    CIGNA also at all times acted through its officers and employees, including the CEO, who were appointed by CIGNA to perform plan-related fiduciary functions, and did so in the course and scope of their employment.

38.    CIGNA had *de facto* control over the activities of its officers and employees, including their Plan-related activities.  Through its Board of Directors, or otherwise, CIGNA had the authority and discretion to hire and terminate its officers and employees.  CIGNA also had the authority and discretion to appoint, monitor, and remove officers and employees from their individual fiduciary roles with respect to the Plan.  In addition, the CIGNA officer and employee fiduciaries' Plan-related activities alleged herein were exercised in the course and scope of their employment with CIGNA.  Furthermore, by failing to discharge their fiduciary duties under

- 12 -

ERISA, the officer and employee fiduciaries breached duties they owed to third parties, including the Plan and the participants and beneficiaries of the Plan. Accordingly, the actions of the Plan's officer and employee fiduciaries are imputed to CIGNA under the doctrine of *respondeat superior*, and CIGNA is liable for these actions.

39.    An employer also acts in a fiduciary capacity under ERISA when it misleads employees about the character and prospects of CIGNA stock for the purpose of affecting the employees' ERISA plan elections. During the Class Period, CIGNA's communications with Plan participants, including CIGNA's SEC filings expressly incorporated by reference into the communications provided to participants, included inaccurate and incomplete information that induced the participants through the Plan to continue to invest in and maintain investments in the CIGNA Stock Fund in the Plan and to accept at face value investments in CIGNA stock with the employer match contributions.

40.    On information and belief, such communications included, but were not limited to, statements to employees encouraging them to invest in CIGNA stock and assuring them of the security of such investments. In addition, the communications were contained in SEC filings and annual reports that were expressly incorporated by reference in the SPD. The SPD states:

> The following documents have been filed with the Securities Exchange Commission (File No. 1-8323) in accordance with the provisions of the Securities Exchange Act of 1934, as amended (the "1934 Act"), and are incorporated by reference in this prospectus: (1) CIGNA's Annual Report on Form 10-K for the year ended December 31, 1996; (2) CIGNA's Quarterly Report on Form 10-Q for the quarter ended March 31, 1997 and June 30, 1997; (3) CIGNA's Current Reports on Form 8-K dated February 11, February 28, March 5, March 31, April 30, July 30, August 4 and October 1, 1997; (4) the description of CIGNA common stock offered hereby which is contained in CIGNA's Registration Statement on Form 8-B dated March 22, 1982, as well as any amendment or report filed for the purpose of updating such description; and (5) the description of Preferred Stock Purchase Rights which is contained in CIGNA's Registration Statement on Form 8-A dated July 23, 1997, as amended by any other amendment or report filed for the purpose of updating such description. All reports and other documents subsequently filed by CIGNA pursuant to Sections 13(a), 13(c), 14 and 15(d) of the 1934 Act, prior to the filing of a

- 13 -

post-effective amendment which indicates that all securities offered hereby have been sold or which registers all securities then remaining unsold, shall also be deemed to be incorporated herein by reference and made a part hereof from their date of filing.

41.     Upon information and belief, the officers signing the securities filings referenced in the SPD did so with knowledge that the materials would be incorporated by reference in the SPD and, therefore, made those statements with the intent that they be transmitted to Plan participants.

42.     The communications referenced in this section of the Complaint were inaccurate and incomplete and contributed to an inaccurate impression regarding the security and prudence of Plan investment in CIGNA stock. As a result of such communications, participants lacked sufficient information to make informed decisions regarding whether they should continue to direct the Plan to invest their retirement contributions in CIGNA stock or to continue holding such stock in the Plan. Defendants acted as fiduciaries under ERISA to the extent of this activity.

### (2)     Benefit Plan Committee Named Fiduciary.

43.     The Benefit Plan Committee was appointed by CIGNA to be the Named Fiduciary of the Plan. The Benefit Plan Committee was responsible for all Plan fiduciary functions. Because the Benefit Plan Committee lacks an independent legal existence, its members were personally fiduciaries with respect to the fiduciary functions of the Benefit Plan Committee.

44.     Furthermore, because each and every member of the Benefit Plan Committee was an officer of CIGNA or a related company and acted solely in the course and scope of his or her employment for CIGNA when performing any individual fiduciary functions assigned to such officer, the actions of the Benefit Plan Committee members are imputed to CIGNA under the doctrine of *respondeat superior*, and CIGNA is liable for such actions.

### (3)    CEO Fiduciary.

45.    CIGNA authorized its CEO, who during the Class Period was Hanway, to appoint a chairman and all members of the Benefit Plan Committee. In connection with this authority, Hanway was a fiduciary with responsibility for monitoring such persons to ensure that they prudently and loyally served the interests of the participants. In addition, as a monitoring fiduciary, Hanway had an affirmative obligation to provide the Benefit Plan Committee members with relevant information in his possession that he knew or should have known the members needed in order to prudently and loyally manage the Plan and the Plan assets, including information pertaining to CIGNA's inappropriate and potentially unlawful practices.

### (4)    Plan Administrator Fiduciary.

46.    Defendant Beltz was a fiduciary of the Plan. Beltz was appointed by CIGNA's senior Human Resources officer to administer the Plan, which he did, within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), throughout the Class Period. As Plan Administrator, Beltz or his designees managed day-to-day Plan operations.    The Plan Administrator has the authority to make rules and regulations for the Plan, interpret its terms, and resolve appeals and disputes. Beltz also participated in communications to Plan participants, including, for example, by execution of the Company's Registration Statement on Form S-8 relating to shares of CIGNA Stock to be issued to Plan participants. Thus, Defendant Beltz exercised authority and control respecting management or disposition of the Plan's assets within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(3)(21)(A).

### (5)    Investment Review Group Fiduciaries and Senior Appointing Officers.

47.    IRG members were fiduciaries of the Plan. Throughout the Class Period, IRG members exercised broad responsibility for management and administration of the Plan. Among their other duties, they selected investment funds for the Plan and were required to monitor the performance of the selected Plan funds. In addition, IRG appointed Global Portfolio Strategies,

Inc. ("Global"), a CIGNA subsidiary, to provide advice and assistance in selecting and monitoring Plan investment funds. IRG members, therefore, had an obligation to monitor Global's performance and also to provide Global with relevant information in its possession that IRG members knew or should have known that Global needed in order to adequately and effectively advise IRG regarding the prudence and suitability of Plan investment options.

48.    IRG members each were employees in the Treasurer's Department of the CIGNA Financial Division and the Corporate Benefits Department of the CIGNA Human Resources and Services Division. IRG members were appointed by the Senior Appointing Officers, who, therefore, had an obligation to monitor the IRG members and to provide relevant information in their possession that they knew or should have known that the IRG members needed in order to prudently manage the Plan's assets and to otherwise carry out their fiduciary duties for the Plan.

### (6)    Board Committee Fiduciaries.

49.    The Board Committee was comprised of outside directors for CIGNA. The Board Committee members were fiduciaries of the Plan in that the Board Committee exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or exercised discretionary authority or discretionary responsibility in the administration of the Plan, through, among other actions, the selection and monitoring of Plan fiduciaries, including the investment fiduciaries, and the monitoring of the investment of Plan assets. The Board Committee had an obligation to ensure that the other Plan fiduciaries were acting prudently and loyally and to take action in the event this was not the case. The Board Committee also had an obligation to provide the other fiduciaries with relevant information in its possession that it knew or should have known that the other fiduciaries needed in order to prudently manage the Plan's assets, and to otherwise carry out their fiduciary duties for the Plan. The Board Committee members currently are not named in this suit. However, in the event it is determined that Board Committee members knew or should have known that CIGNA was not a suitable or prudent investment for

- 16 -

Plan assets, that participants were not provided with complete and accurate information regarding CIGNA stock, that the Plan paid more than adequate consideration for the stock, or that the Board Committee otherwise failed to discharge its fiduciary obligations under the Plan or ERISA, Plaintiffs will seek leave to amend the Complaint to add claims against Board Committee members.

## C.   CIGNA Became an Imprudent Investment for the Plan as a Result of Improper and Potentially Unlawful Business and Accounting Practices.

50.   Upon information and belief, during the Class Period and before, CIGNA and the Plan's other fiduciaries, including, but not limited to Hanway, the Senior Appointing Officers, and the Benefit Plan Committee members, knew or should have known about several questionable and potentially illegal practices that made CIGNA stock an unduly risky and, thus, unsuitable and inappropriate Plan investment. These practices included, but were not limited to, failing to establish adequate reserves for its reinsurance obligations by hundreds of millions of dollars and misrepresenting the effect of this failure in its financial and public statements.[1]

51.   CIGNA's divisions include Employee Health Care, Life and Disability Benefits, CIGNA Group Insurance, Employee Retirement Benefits and Investment Services, and International Life, Health, and Employee Benefits and Other Operations. CIGNA's "Other Operations" consist of deferred gains recognized from the 1998 sale of its individual life insurance and annuity business and the 2000 sale of its United States individual life, group life, and accidental death reinsurance businesses, corporate life insurance business on which policy loans are outstanding, reinsurance operations, settlement annuity business, and certain investment management services initiatives.

---

[1] Another practice involved alleged deliberate and deceitful health care reimbursement practices in violation of state and federal law, including RICO, as a result of which thousands of doctors have sued CIGNA for hundreds of millions of dollars. The matter has been consolidated before U.S. District Judge Federico Moreno in Florida. CIGNA recently attempted to avoid liability in the case by seeking to settle an action in Illinois in which similar claims were asserted. Judge Moreno blocked the settlement on the basis that "it cannot turn a blind eye to the underhanded maneuvers CIGNA took to obtain this settlement agreement. CINGA snookered both this Court and Judge Murphy in Illinois in an obvious attempt to avoid this Court's jurisdiction."

52.     Before the start of the Class Period, CIGNA had placed its remaining reinsurance businesses, including its accident, domestic health, international life and health, and specialty life reinsurance businesses, into "run-off" and stopped underwriting new reinsurance business.

53.     For the run-off reinsurance business, CIGNA claimed to have established reserves to reflect the present value of expected future obligations, less the present value of expected premiums.  In addition, CIGNA claimed to have established adequate loss reserves for claims received but not yet paid, based on the amount of the claim received, and for losses incurred but not reported, based on prior claim experience.

54.     In connection with its reserves, during 2000, CIGNA recorded the following $127 million in after-tax charges, attributed to run-off reinsurance:

- $84 million to strengthen reserves, following a review of reserve assumptions for certain specialty life reinsurance contracts. These contracts guarantee certain minimum death benefits based on unfavorable changes in variable annuity account values. These values are derived from underlying equity and bond mutual fund investments;

- $40 million to strengthen reserves for accident reinsurance contracts; and

- $3 million for restructuring costs (principally severance).

55.     With this charge, combined with Defendants' Class Period statements that CIGNA's performance was strong and its reinsurance reserves were adequate, such as those described below, investors, including Plan participants, were led to believe that CIGNA presented a prudent retirement investment choice.  In reality, however, CIGNA's reinsurance reserves were critically underfunded, rendering CIGNA stock an improper and imprudent Plan investment.

56.     On May 2, 2001, CIGNA announced its results for the first quarter of 2001. Reported operating income increased by 12 percent from the prior year to $272 million, or $1.76 per share.

57.     On May 4, 2001, CIGNA filed its first quarter 2001 Form 10-Q with the SEC,
which reported the previously announced operating income of $272 million and other strong
performance figures. In addition, CIGNA described its reinsurance operations and dismissed its
reinsurance risk as follows:

> Unicover and London Reinsurance. The run-off reinsurance operations
> include approximately a 35% share in the primary layer of a workers'
> compensation reinsurance pool, which was formerly managed by
> Unicover Managers, Inc. The pool had obtained reinsurance for a
> significant portion of its exposure to claims, but disputes have arisen
> regarding this reinsurance (retrocessional) coverage. The retrocessionaires
> have commenced arbitration in the United States against Unicover and the
> pool members, seeking rescission or damages. In addition, two of the
> retrocessionaires have commenced a separate arbitration in the United
> Kingdom asserting that CIGNA provides additional retrocessional
> coverage to them, which CIGNA denies.
>
> CIGNA has also ceded other reinsurance business in the London market.
> Some retrocessionaires are disputing the validity of these reinsurance
> contracts with CIGNA. Arbitration over some of these disputes has
> commenced.
>
> Resolution of these matters is likely to take some time and the outcomes
> are uncertain. If some or all of the arbitration results are unfavorable,
> CIGNA could incur losses material to its consolidated results of
> operations. ***However, management does not expect the arbitration results
> to have a material adverse effect on CIGNA's liquidity or financial
> condition.***
>
> Other Reinsurance. CIGNA could have losses if reinsurers fail to
> indemnify CIGNA on other reinsurance arrangements, whether because of
> reinsurer insolvencies or contract disputes. However, ***management does
> not expect charges for other unrecoverable reinsurance to have a
> material effect on CIGNA's results of operations, liquidity or financial
> condition.***

(Emphasis supplied.)

58.     CIGNA's second quarter Form 10-Q, filed with the SEC on August 3, 2001, its
third quarter Forms 10-Q, filed with the SEC on November 2, 2001, and other periodic reports

filed during the Class Period contained substantially similar statements about the state of the Company's reinsurance business.

59.     CIGNA further assured investors that its loss contingencies would not materially affect the Company's financial condition:

> CIGNA, through its subsidiaries, is contingently liable for various financial guarantees provided in the ordinary course of business. For example, CIGNA guarantees a minimum level of benefits for certain separate account contracts.
>
> Although the ultimate outcome of any loss contingencies arising from CIGNA's financial guarantees may adversely affect results of operations in future periods, they are not expected to have a material adverse effect on CIGNA's liquidity or financial condition.

60.     CIGNA's second and third quarter Forms 10-Q and other periodic reports filed throughout the Class Period contained substantially similar statements.

61.     On February 28, 2002, CIGNA filed its 2001 annual report Form 10-K with the SEC.  The Company touted its performance, reporting operating income of $1.1 billion, an increase of 6 percent from the prior year.  In the report, the Company provided the following discussion on its remaining reinsurance operations:

> CIGNA sold its individual life insurance and annuity business in 1998. A portion of the gain was deferred because the principal agreement to sell this business was an indemnity reinsurance arrangement. The deferred portion is being recognized at the rate that earnings from the sold business would have been expected to emerge, primarily over 15 years on a declining basis. Because it was an indemnity reinsurance transaction, CIGNA is not relieved of liability for the reinsured business. See Note 3 to CIGNA's 2001 Financial Statements included in its Annual Report.
>
> As of June 1, 2000, CIGNA sold its U.S. individual life, group life and accidental death reinsurance business for cash proceeds of approximately $170 million. The sale generated an after-tax gain of approximately $85 million, but recognition of that gain was deferred because the sale was structured as an indemnity reinsurance arrangement. During 2001, the acquirer entered into agreements with most of the reinsured parties, relieving CIGNA of any remaining obligations to those parties. As a result, CIGNA accelerated the recognition of most of the deferred gain in 2001. For additional discussion, see page 19 of the MD&A section and

- 20 -

Note 3 to CIGNA's 2001 Financial Statements included in its Annual Report.

CIGNA has placed its remaining reinsurance businesses (including its accident, domestic health, international life and health, and specialty life reinsurance businesses) into run-off and stopped underwriting new reinsurance business. For the run-off reinsurance business, *CIGNA has established policy reserves that reflect the present value of expected future obligations less the present value of expected premiums. In addition, CIGNA establishes loss reserves for claims received but not yet paid, based on the amount of the claim received, and for losses incurred but not reported, based on prior claim experience.*

The run-off reinsurance business includes specialty life reinsurance contracts that contain certain guarantees for variable annuities. One type of reinsurance contract guarantees minimum income benefits based on unfavorable changes in variable annuity account values. The other type guarantees a minimum death benefit, also based on unfavorable changes in variable annuity account values. The variable annuity account values are based on underlying equity and bond mutual fund investments. *For those reinsurance contracts that guarantee minimum income benefits, CIGNA has purchased reinsurance from third parties, which substantially reduces the risk of these contracts. For those reinsurance contracts that guarantee a minimum death benefit, CIGNA has established reserves for the liabilities that are considered likely to arise from these contracts. Nevertheless, the guarantees under these contracts are subject to equity market risk in the event of significant and sustained stock market declines.*

The run-off reinsurance business also includes an approximate 35% share in the primary layer of a workers' compensation reinsurance pool, which was formerly managed by Unicover Managers, Inc. For additional information about arbitrations regarding retrocessional coverage of the pool, see page 41 below and page 25 of the MD&A section of CIGNA's Annual Report.

CIGNA has ceded other reinsurance business in the London market. Some retrocessionaires are disputing the validity of these reinsurance contracts with CIGNA. Arbitration over some of these disputes has commenced.

Some of these matters are likely to be resolved in 2002. The outcomes are uncertain. If some of the arbitration results are unfavorable, CIGNA could incur losses material to its consolidated results of operations. *However, management does not expect the arbitration results to have a material adverse effect on CIGNA's liquidity or financial condition.* See pages 25 and 26 of the MD&A section and Note 16 of CIGNA's Annual Report.

(Emphasis supplied.)

62.     On May 2, 2002, CIGNA filed its first quarter 2001 Form 10-Q with the SEC.
The Company reported operating income of $275 million, or $1.92 per share, compared to $1.76
per share in the first quarter of 2001.  The Company continued to dismiss the severity of its
reinsurance risks:

> In certain cases, CIGNA guarantees a minimum level of benefits for
> retirement and insurance contracts written in separate accounts. CIGNA
> establishes an additional liability if management believes that CIGNA will
> be required to make a payment under these guarantees, which include the
> following:
>
> *     *     *
>
> Under arrangements with certain retirement plan sponsors, CIGNA
> guarantees that plan participants will receive the value of their accounts if
> they withdraw their balances. ***These guarantees could require payment by
> CIGNA in the event that a significant number of plan participants
> withdraw their accounts when the market value of the related assets is
> less than the plan participant account values at the time of withdrawal.***
> Participant account values under these arrangements were $2.2 billion as
> of March 31, 2002, and $1.8 billion as of December 31, 2001. There were
> no additional liabilities required for these guarantees as of
> March 31, 2002, or December 31, 2001.
>
> *     *     *
>
> ***CIGNA does not expect that these guarantees will have a material
> adverse effect on CIGNA's consolidated results of operations, liquidity
> or financial condition.***

(Emphasis supplied.)

63.     On August 2, 2002, CIGNA filed its second quarter 2002 Form 10-Q with the
SEC, reporting strong earnings but emphasizing its focus on accelerating growth and earnings.
The Form 10-Q discussed CIGNA's reinsurance operations and risks and again confirmed that
the liability was not expected to be material, stating:

> The run-off reinsurance operations include specialty life reinsurance
> contracts that guarantee certain minimum death benefits based on
> unfavorable changes in variable annuity account values. Liabilities for this

business are estimated using actuarial assumptions as to premiums, future investment yield, mortality, withdrawals, equity market returns and the volatility of the underlying equity and bond mutual fund investments. These assumptions are based on CIGNA's experience, actuarial tables and historical market experience adjusted to reflect both short-term and long-term future expectations. *As previously disclosed, significant and sustained stock market declines could trigger increased payments under these contracts. If the stock market were to remain at or fall below current levels for a sustained period, CIGNA would be required to increase reserves for these contracts in amounts that would be material to CIGNA's consolidated results of operations and could be material to its financial condition. These amounts are not expected to be material to CIGNA's liquidity.*

64. On September 3, 2002, however, CIGNA announced it would be taking a $720 million after-tax ($1.1 billion pre-tax) charge in the third quarter to strengthen reserves and hedge against future losses related to its run-off reinsurance contracts. CIGNA attributed the need for the write-off to equity market decline and volatility during the third quarter of 2002:

> PHILADELPHIA, September 3, 2002 — CIGNA Corporation (NYSE: CI) today announced that it will record an after-tax charge of $720 million to strengthen reserves related to certain run-off reinsurance contracts including the impact of a program adopted by CIGNA to substantially reduce equity market risks related to these contracts.
>
> "Recent declines and volatility in the equity markets significantly increased the company's exposure to future death claims on certain variable annuity run-off reinsurance contracts. The actions we are taking substantially reduce the impact of future equity market declines arising from these contracts and maintain the financial strength that our customers expect," said H. Edward Hanway, CIGNA's Chairman and Chief Executive Officer.
>
> CIGNA's reinsurance operations, which were discontinued in 2000 and are now an inactive business in run-off mode, reinsured a guaranteed minimum death benefit under certain variable annuities issued by other insurance companies. A variable annuity is essentially an investment in mutual funds often combined with a death benefit. Death benefits under the annuity contracts reinsured by CIGNA are determined using various methods.
>
> The majority of CIGNA's exposure arises under annuities that guarantee that the benefit received at death will be no less than the highest historical

- 23 -

account value of the related mutual fund investments on an annuitant's contract anniversary date. Under this type of death benefit, CIGNA is liable to the extent the highest historical anniversary account value exceeds the fair value of the related mutual fund investments at the time of an annuitant's death. Other annuity designs that CIGNA reinsured guarantee that the benefit received at death will be no less than net deposits paid into the contract accumulated at a specified rate or net deposits paid into the contract. In periods of declining equity markets and in periods of flat equity markets following a decline, CIGNA's liabilities for these guaranteed minimum death benefits increase.

65.   The write-off was comprised of the following charges:

$620 million after-tax, principally reflecting the reduction in assumed future equity market returns as a result of implementing the program and, to a lesser extent, changes to the policy surrender, mortality, market volatility and discount rate assumptions used in estimating the liabilities for these contracts. As noted above, CIGNA determines liabilities under the reinsurance contracts using an assumption for expected future performance of equity markets. A consequence of implementing the program is, effectively, a reduction in the assumption for expected future performance of equity markets, as the futures contracts essentially eliminate the opportunity to achieve previously expected market returns; and

$100 million after-tax reflecting deterioration in equity markets that occurred in the third quarter of 2002 (prior to implementation of the program).

66.   CIGNA also announced the implementation of a program designed to reduce

future equity market exposure and the program's potentially substantial financial consequences:

As a result of equity market declines and volatility early in the third quarter of 2002, CIGNA evaluated alternatives for addressing the exposures associated with these reinsurance contracts, considering the possibility of continued depressed equity market conditions, the potential effects of further equity market declines and the impact on future earnings and capital. As a result of this evaluation, CIGNA implemented a program to substantially reduce the equity market exposures of this business by selling exchange-traded futures contracts, which are expected to rise in value as the equity market declines and decline in value as the equity market rises.

The purpose of this program is to substantially reduce the adverse effects of potential future stock market declines on CIGNA's liabilities for the

> reinsurance contracts, as increases in liabilities under the reinsurance
> contracts from a declining market will be substantially offset by
> investment gains on the futures contracts. A consequence of this program
> is that it also substantially reduces the positive effects of potential future
> equity market increases, as reductions in liabilities under these contracts
> from improved equity market conditions will be substantially offset by
> investment losses on the futures contracts.

67.     CIGNA reassured the market and Plan participants however, that the write-off and

new program implementation would not affect its third quarter and fiscal 2002 operating results.

68.     On October 18, 2002, CIGNA announced the need to record an additional after-

tax charge of approximately $315 million, in connection with the Unicover Managers, Inc.

arbitration award and reinsurance exposure in the London market. CIGNA explained the

additional write-off as follows:

> CIGNA's reinsurance operations, which were discontinued in 2000 and
> are now an inactive business in run-off mode, participated in the primary
> layer of a workers' compensation reinsurance pool, which was formerly
> managed by Unicover Managers, Inc. The pool had obtained reinsurance
> for a significant portion of its exposure to claims, but disputes arose
> regarding this reinsurance coverage, leading to arbitration. Recently, the
> arbitration panel rendered a decision.

> In addition, the run-off reinsurance operations also include reinsurance
> contracts assumed by CIGNA in the London market. As previously
> disclosed, the Company undertook a review of these exposures. This
> review is now complete.

> Based on this review, the Company will record an after-tax charge of
> approximately $315 million for Unicover and London market exposures.

69.     Ultimately, CIGNA was unable to meet its third quarter and fiscal 2002 earnings

forecasts, even excluding the more than $1 billion in reinsurance-related charges.

70.     As a result of CIGNA's failure to reserve for its reinsurance business, CIGNA

inflated the Company's revenues and earnings, which violated GAAP and rendered CIGNA's

financial statements materially false.

71.     As a result of CIGNA's artificial inflation of the Company's revenues through its failure to reserve for its reinsurance business, the market price for CIGNA's stock was artificially inflated beginning on or about May 2, 2001, and continuing until at least October 18, 2002. Throughout this period, the price of CIGNA stock prevailing on the exchanges did not represent the fair market value of Company stock.

**D.     The Plan Fiduciaries Caused and Permitted the Plan to Make and Maintain Investments in CIGNA Stock Held by the CIGNA Stock Fund When They Knew or Should Have Known that CIGNA Stock Was Not a Prudent Plan Investment.**

72.     At all relevant times after May 2, 2001, Defendants, including, but not limited to, CIGNA, Hanway, the Senior Appointing Officers, and the members of the Benefit Plan Committee, knew that CIGNA was engaged in conduct that made its stock unduly risky, unsuitable, and inappropriate investment for Plan assets. This conduct included its failure to adequately and appropriately establish reserves for its reinsurance obligations, to truthfully and accurately reflect its true revenues in its financial statements, to disclose the truth about its performance to participants and the investing public, and to take into account the fact that its stock was inflated in value as a result of CIGNA's overstatement of revenues when determining whether and to what extent the Plan should continue to invest in and hold Plan assets in CIGNA stock.

73.     Defendants, including, but not limited to, CIGNA, Hanway, the Senior Appointing Officers, and the members of the Benefit Plan Committee, knew or should have known that CIGNA stock was no longer a prudent investment option for the participants of the Plan in light of the above failures. In addition, upon information and belief, the other Plan fiduciaries named in the Complaint, including, Plan Administrator Beltz, and the IRG members, knew or should have known about the circumstances that rendered CIGNA stock an unsuitable and inappropriate investment for Plan assets during the Class Period.

74.     In addition, Defendants, as fiduciaries responsible for monitoring the investment of Plan assets, failed to adequately review the performance of the Plan fiduciaries to ensure that

they were fulfilling their fiduciary duties under the Plan and ERISA. They also failed to conduct an appropriate investigation into whether CIGNA stock was a prudent investment for the Plan and, in connection therewith, failed to provide the Plan's other fiduciaries, as well as the participants themselves, with information regarding CIGNA's improper activities, such that the other fiduciaries and the participants could make informed decisions regarding CIGNA stock in the Plan. Hanway's failure in this regard is particularly apparent. As a result of his role as the CEO, Hanway knew or should have known about CIGNA's improper practices yet, upon information and belief, despite his obligation to monitor the Named Fiduciary Committee and provide the Benefit Plan Committee members with information he knew or should have known was critical for the prudent management of the CIGNA stock in the Plan, Hanway remained silent.

75.    Because Defendants knew or should have known that CIGNA stock no longer was a prudent investment option for the Plan, they had an obligation to protect the Plan and its participants from unreasonable and entirely predictable losses incurred as a result of the Plan's investment in CIGNA stock.

76.    Defendants had available to them several different options for satisfying this duty, including making appropriate public disclosures as necessary; divesting the Plan of CIGNA stock; discontinuing further matching and incentive contributions in CIGNA stock; lifting restrictions on the ability of participants to reallocate matching and incentive contributions to other funds in the Plan before the damage already was done; ceasing to offer the CIGNA Stock Fund as an investment option for the participants of the Plan; notifying appropriate federal agencies, such as the Department of Labor, of the issues affecting Plan investments in CIGNA Stock; consulting independent fiduciaries regarding appropriate measures to take in order to prudently and loyally serve the participants of the Plan; or resigning as Plan fiduciaries to the extent that as a result of their employment by CIGNA they could not loyally serve Plan participants in connection with the Plan's acquisition and holding of CIGNA stock.

77.   Despite the availability of these and other options, the Defendants failed to take any action to protect participants from losses as a result of Plan investment in CIGNA stock. In fact, upon information and belief, Defendants continued to invest or allow investment of Plan assets in CIGNA stock even after CIGNA's inappropriate and potentially unlawful practices came to light.

E.   **The Fiduciaries of the Plan Failed to Provide Participants with Complete and Accurate Information Regarding CIGNA Stock, such that Participants Could Make Reasonably Informed Decisions Regarding CIGNA Stock in the Plan.**

78.   As fiduciaries, Defendants had a duty to provide participants with complete and accurate information regarding the Plan's investment options, including the CIGNA Stock Fund and CIGNA stock in the Plan. This duty was particularly apparent in this case as Defendants communicated directly with participants regarding CIGNA stock by, on information and belief, encouraging participants to contribute to the CIGNA Stock Fund, by expressly incorporating SEC and other filings regarding the stock in the SPD, and by directing participants to review the reports in order to educate themselves regarding the risks and benefits of investing in CIGNA stock in the Plan.

79.   Despite these duties, however, Defendants failed to provide Plan participants with complete and accurate information regarding CIGNA stock, such that the participants could appreciate the true risks presented by investments in CIGNA stock and could make informed decisions regarding investments in the CIGNA Stock Fund.

80.   Among other deficiencies, Defendants failed to provide participants, and the public, with information regarding CIGNA's inappropriate and potentially unlawful practices, including critical underfunding of reinsurance reserves and inaccurate public statements and filings regarding the Company's performance. Certain Defendants, including CIGNA, Hanway, and other senior officers who exercised fiduciary roles with respect to the Plan, knew or should have known of these improper business practices that rendered CIGNA an unsuitable Plan investment, yet they failed to communicate this information to the participants or other investing

fiduciaries. Had Defendants provided this and other material information to participants and the other investing fiduciaries, as a reasonably prudent fiduciary would have done, participants would have had information demonstrating that CIGNA stock was not a prudent investment for Plan assets and would have been in a position to act accordingly to protect themselves from massive losses.

**F.      The Plan Does Not Qualify as an ERISA § 404(c) Plan Because Participants Did Not Exercise "Independent Control" Over Investments in CIGNA Stock, and the Participants Were Not Informed that the Plan Intended to Qualify as a 404(c) Plan.**

81.      ERISA § 404(c) provides a limited exception to fiduciary liability for losses that result from participants' exercise of control over investment decisions, but not for liability for the selection of imprudent investment options for the Plan. In order for § 404(c) to apply, participants must in fact exercise "independent control" over investment decisions.

82.      As alleged above, Defendants failed to provide participants with complete and accurate information regarding CIGNA stock in the Plan. Accordingly, participants failed to exercise the requisite independent control over their investment in CIGNA stock in the Plan. Therefore, § 404(c) of ERISA does not apply to participants' "investment decisions" regarding CIGNA stock, and Defendants remain liable for losses suffered by participants during the Class Period as a result of such decisions.

**G.      The Fiduciaries of the Plan Imprudently Paid More than Adequate Consideration for the CIGNA Stock in the Plan During the Class Period.**

83.      Defendants knew or should have known that, as a result of its inappropriate and potentially unlawful practices, its revenues were overstated, and the share prices of its stock prevailing on the national exchanges did not represent a true fair market value of the shares. Notwithstanding this fact, the Plan continued to accept contributions of and acquire shares of CIGNA stock for the CIGNA Stock Fund during the Class Period at inflated per-share prices that represented more than adequate consideration for such shares.

84.    On information and belief, during the years 2001 and 2002, Defendants directed millions of dollars in moneys and securities into the CIGNA Stock Fund as matching and incentive employer contributions.   In addition, in 2001 and 2002, the Trustee was also directed to invest what is believed to be millions of dollars of participants' contributions in the CIGNA Stock Fund.   Because common shares of CIGNA were substantially inflated and exceeded fair market value at the time these acquisitions were made, the participants of the Plan suffered substantial losses as a result.

85.    As a Plan fiduciary, CIGNA was a party in interest with respect to the Plan within the meaning of § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

86.    Because the information and documents on which Plaintiff's claims are based are, for the most part, solely in Defendants' possession, certain of Plaintiff's allegations are by necessity upon information and belief.   In addition, given ERISA's functional conception of fiduciary, absent formal discovery it is impossible to know at all times exactly which fiduciaries performed which functions.   At such time as Plaintiff has had the opportunity to conduct essential discovery, Plaintiff will to the extent necessary and appropriate amend her Complaint, or, if required, seek leave to amend to add such other additional facts as are discovered that further support each of the following Counts below.

## VI. CLAIMS FOR RELIEF

### COUNT I

**Failure to Prudently and Loyally Manage Plan Assets**

**(Breaches of fiduciary duties and co-fiduciary duties in violation of ERISA, 29 U.S.C.
§ 1104(a)(1)(A)-(D), 29 U.S.C. § 1105 by CIGNA, Benefit Plan Committee, Plan
Administrator Beltz, IRG Members)**

87.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

88.     At all relevant times, Defendants acted as fiduciaries within the meaning of ERISA 3(21)(A), 29 U.S.C. § 1002(21)(A), by exercising authority and control with respect to the management of the Plan and Plan assets.

89.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan.   ERISA § 404(a), 29  U.S.C.§ 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —
>
> (A)   for the exclusive purpose of
>
>> (i)   providing benefits to participants and their beneficiaries; and
>>
>> (ii)   defraying reasonable expenses of administering the plan;
>
> (B)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;
>
> (C)   by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D)   in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

90.     ERISA also imposes explicit co-fiduciary duties on plan fiduciaries.   ERISA § 405, 29  U.S.C. § 1105, states, in relevant part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1)   if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2)     if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

91.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of the plan or disposition of plan assets are responsible for ensuring that investment options made available to participants under a plan are prudent. Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested, unless the plan qualifies as a § 404(c) plan. As alleged herein, § 404(c) does not apply to the Plan. Moreover, participants had no control over matching contributions in CIGNA stock in the Plan, as CIGNA directed such contributions, and participants for the most part could not reallocate such contributions to other funds in the Plan. Defendants, therefore, were responsible for ensuring that all investments in CIGNA stock in the Plan were prudent and are liable for losses incurred as a result of such investments.

92.     A fiduciary's duty of loyalty and prudence require it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so, as was done here.

93.     During the Class Period, Defendants knew or should have known that CIGNA stock was not a suitable and appropriate investment for the Plan in light of CIGNA's inappropriate and potentially unlawful accounting practices. Nonetheless, during the Class Period, these fiduciaries continued to offer CIGNA stock as an investment option for the Plan

and to direct and approve investment of matching contributions in CIGNA stock. Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, Defendants failed to take adequate steps to prevent the Plan, and indirectly the Participants, from suffering losses as a result of the Plan's investment in CIGNA stock.

94.     In addition, the fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

95.     Upon information and belief, Defendants named in this Count breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*: failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in CIGNA stock; failing to notify appropriate federal agencies, including the United States Department of Labor, of the facts and transactions which made CIGNA stock an unsuitable investment for the Plan; and failing to take such other steps as were necessary to ensure that participants' interests were loyally and prudently served; and with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate and potentially unlawful practices, and by otherwise placing the interests of the Company and its officers and directors above the interests of the participants with respect to CIGNA stock in the Plan.

96.     Defendants also breached their co-fiduciary obligations by, among other failures, knowingly participating in, or knowingly undertaking to conceal, other fiduciaries' failures to prudently and loyally manage Plan assets despite knowing that such other failures were breaches; enabling other fiduciaries to fail to prudently and loyally manage Plan assets as a result of their own fiduciary breaches, including their failure to monitor other fiduciaries; acts or omissions of other fiduciaries, knowing that such acts or omissions were breaches, and by having knowledge

of other fiduciaries' failures to prudently and loyally manage the Plan assets, yet not making any effort to remedy the breaches.

97.     As a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, lost millions of dollars.

98.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary and co-fiduciary duties alleged in this Count.

## COUNT II

### Failure to Provide Complete and Accurate Information to Participants and Beneficiaries

### (Breaches of fiduciary duties and co-fiduciary duties in violation of §§ 404 and 405 of ERISA, 29 U.S.C. § 1104 and 1105 by CIGNA, Benefit Plan Committee, Plan Administrator Beltz, and the IRG Members)

99.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

100.     At all relevant times, Defendants acted as fiduciaries within the meaning of ERISA 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and control with respect to the management of the Plan and Plan assets.

101.     The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need in order to exercise their rights and interests under the plan.

102.     This duty to inform participants includes an obligation to provide participants and beneficiaries of the plan with complete and accurate information, and to refrain from providing false information or concealing material information regarding plan investment options such that participants can make informed decisions with regard to investment options available under the

- 34 -

plan. This duty applies to all plan investment options, including, where applicable, company stock.

103.    Because investment in the CIGNA Stock Fund was by definition not diversified, such investment carried with it an inherently high degree of risk. This inherent risk made the Defendants' duty to provide complete and accurate information particularly important with respect to the CIGNA Stock Fund.

104.    The Defendants breached their duty to inform participants by failing to provide complete and accurate information regarding CIGNA stock, CIGNA's accounting improprieties, and the consequent artificial inflation of the value of the stock and, generally, by conveying inaccurate information regarding the soundness of CIGNA stock and the prudence of investing retirement contributions in the stock. This failure was particularly devastating to the Plan and the participants, as more than 20 percent of the Plan's assets were invested in the Fund, and, thus, losses in the fund had a substantial impact on participants' retirement assets.

105.    Defendants breached their co-fiduciary duties by knowingly participating in and knowingly undertaking to conceal the failure of other fiduciaries to provide complete and accurate information regarding CIGNA Stock, despite knowing of this breach; by enabling such conduct as a result of their own failure to satisfy its fiduciary duties, including their monitoring duties; and by having knowledge of other fiduciaries' failures to satisfy their duty to provide complete and accurate information to participants, yet not making any effort to remedy the breaches.

106.    These actions and failures to act were uniform, Plan-wide, and caused the participants and beneficiaries of the Plan to continue to make and to maintain substantial investments in CIGNA stock in the CIGNA Stock Fund at a time when Defendants knew or should have known that the CIGNA stock was not a prudent investment option for the Plan. Plaintiff, and the class as a whole, relied to their detriment on Defendants' incomplete and inaccurate statements regarding CIGNA stock.

107.    As a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, lost millions of dollars.

108.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary and co-fiduciary duties alleged in this Count.

## COUNT III

### Failure to Monitor the Plan's Fiduciaries

#### (Breaches of fiduciary and co-fiduciary duties in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(D), 29 U.S.C. § 1105, by all Defendants)

109.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

110.    At all relevant times Defendants acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), with respect to the Plan because they were charged with, responsible for, and otherwise assumed the duty of appointing, monitoring, and, when and if necessary, removing other Plan fiduciaries.

111.    Each of these Defendants had specific monitoring duties under the Plan, which included, but were not limited to the following: (1) CIGNA was responsible for monitoring Hanway, as well as its other officers and employees who performed all fiduciary functions in the course and scope of their employment; (2) the Benefit Plan Committee was responsible for monitoring all Plan fiduciaries as a result of its position as Named Fiduciary and general management and administration of the Plan and the Plan's assets; (3) Hanway was responsible for monitoring the Benefit Plan Committee members as a result of his appointment of them; (4) the Senior Appointing Officers were responsible for monitoring the activities of the IRG members, ensuring that they prudently and loyally served the interests of Participants, and otherwise satisfied their fiduciary obligations; (5) the IRG members were responsible for

monitoring the activities of Global, which it expressly was authorized to appoint to provide investment guidance and advice regarding Plan assets; and (6) Plan Administrator Beltz was responsible for monitoring the activities of his delegees, if any, who participated in the administration and management of the Plan and the Plan's assets.

112.    Under ERISA, a monitoring fiduciary must ensure that the other fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and to take prompt and effective action to protect the plan and participants when they are not.    In addition, a monitoring fiduciary must provide the other fiduciaries with accurate information in their possession that they know or reasonably should know that the other fiduciaries must have in order to prudently to manage the plan and the plan assets.

113.    Defendants breached their fiduciary duties by failing to adequately monitor the other fiduciaries whom they appointed, were under their authority and control, or to whom they otherwise assigned or delegated fiduciary responsibility.    Defendants knew or should have known that the fiduciaries they were responsible for monitoring were imprudently allowing the Plan to continue offering CIGNA stock as an investment option and investing Plan assets in CIGNA stock when it no longer was prudent to do so, yet failed to take action to protect the participants from the consequences of the other fiduciaries' failures.

114.    In addition, as a result of its inappropriate and potentially unlawful practices and implicit knowledge thereof, CIGNA, Hanway, the Senior Appointing Officers, and the Benefit Plan Committee members, in connection with their monitoring and oversight duties, were required to disclose to the other fiduciaries directly involved in the investment of Plan assets accurate information about the financial condition and practices of CIGNA that they knew or should have known that the investing fiduciaries needed in order to make sufficiently informed decisions.    By remaining silent and continuing to conceal such information from the other fiduciaries, these Defendants breached their monitoring duties under the Plan and ERISA.

115.    Defendants breached their co-fiduciary duties by knowingly participating in and knowingly undertaking to conceal the failure of other fiduciaries to appropriately monitor the Plan's other fiduciaries, despite knowing of this breach; by enabling such conduct as a result of their own failure to satisfy their fiduciary duties, including their monitoring duties; and by having knowledge of other fiduciaries' failures to satisfy their monitoring duties, yet not making any effort to remedy the breaches.

116.    In summary, Defendants breached their monitoring duties by:

a.      failing to adequately monitor the investing fiduciaries' investment of Plan assets;

b.      failing to adequately monitor the Plan's other fiduciaries' implementation of the terms of the Plan, including but not limited to the investment of Plan assets in CIGNA stock;

c.      failing to disclose to the investing fiduciaries material facts concerning the financial condition and practices of CIGNA that they knew or should have known were material to loyal and prudent investment decisions concerning the Plan's acquisition and retention of CIGNA stock in the CIGNA Stock Fund, and with respect to the implementation of the terms of the Plan;

d.      failing to remove fiduciaries who they knew or should have known were not qualified to loyally and prudently manage the Plan's assets;

e.      failing to appropriately monitor the merits of investing Plan assets in CIGNA stock;

f.      enabling other fiduciaries to breach their duties particularly with respect to the investment of Plan assets, and the disclosure of complete and accurate information regarding CIGNA stock, as a result of their own failure to appropriately monitor the other fiduciaries' conduct; and

g.      having knowledge of the fiduciary breaches of other fiduciaries, yet not making any effort to remedy the breaches.

117.    As a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, lost millions of dollars.

118.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a),
Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of
fiduciary and co-fiduciary duties alleged in this Count.

## COUNT IV

### Causing the Plan to Engage in a Prohibited Transaction by Acquiring CIGNA Stock for the Plan for More than Adequate Consideration

### (Violation of §§ 406 and 407 of ERISA, 29 U.S.C. § 1106 and 1107, by CIGNA, Hanway, Benefit Plan Committee, Plan Administrator Beltz, and IRG Members)

119.    Plaintiff incorporates the allegations contained in the previous paragraphs of this
Complaint as if fully set forth herein.

120.    At all relevant times, Defendants named in this Count acted as fiduciaries within
the meaning of ERISA 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and control
with respect to the management of the Plan and Plan assets.

121.    The general duties of loyalty and prudence imposed by § 404 of ERISA are
supplemented by a detailed list of transactions which are expressly prohibited by § 406 of
ERISA, 29 U.S.C. § 1106, and are considered *per se* violations because they entail a high
potential for abuse.    One such prohibited transaction is the direct or indirect acquisition by a
fiduciary on behalf of the plan of any qualified employer security unless such acquisition is for
no more than "adequate consideration."    ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E);
ERISA § 408(e), 29 U.S.C. § 1108(e). Thus, pursuant to these provisions of ERISA, the
fiduciaries of the Plan were prohibited from causing the Plan to accept as employer contributions
or otherwise acquire shares of CIGNA stock as an investment for the Plan, unless no more than
adequate consideration was paid for the shares.

122.    Defendants named in this Count, by their actions and omissions in (1) authorizing
or causing the Plan to continue offering CIGNA stock in the CIGNA Stock Fund as an
investment option for the Plan; (2) permitting participants to invest in CIGNA stock; and

- 39 -

(3) accepting matching and incentive contributions in the form of CIGNA stock at a time when they knew or should have known that the price per share at which the Plan was acquiring or accepting CIGNA stock was more than adequate consideration for such shares, causing the Plan to engage in transactions that Defendants knew or should have known constituted a direct or indirect acquisition on behalf of the Plan of CIGNA stock in violation of §§ 406(a)(1)(E) and 407(a) of ERISA, 29 U.S.C. §§ 1106(a)(1)(E) and 1107(a).

123. Because the price at which Defendants caused or allowed the Plan to accept or acquire shares of CIGNA stock exceeded fair market value, and, therefore, was more than adequate consideration, the prohibited transactions are not exempt under the provisions of § 408(e)(1) of ERISA, 29 U.S.C. § 1108(e)(1).

124. By information and belief, during the Class Period, Defendants caused or allowed the Plan to acquire CIGNA stock at an artificially inflated price that exceeded true fair market value and, thus, was acquired for more than adequate consideration. As a result, the Plan's acquisitions of the stock were prohibited transactions and *per se* violations of ERISA §§ 406(a)(1)(E) and 407(a), 29 U.S.C. §§ 1106(a)(1)(E) and 1107(a).

125. Under §§ 409(a) and 502(a)(2) and (3) of ERISA, 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (3), the Court has the equitable power to redress such violations by undoing the prohibited transactions through rescission. In the present case, the appropriate remedy would be for the Court to require Defendants to restore to the Plan the full value of all contributions used to purchase CIGNA stock for more than adequate consideration during the Class Period.

126. In addition, in order to fully restore the Plan and its participants to the position they would have been in had the fiduciaries of the Plan not engaged in the prohibited transactions alleged in this Complaint, Plaintiff is entitled to recover the amount the contributions in CIGNA stock would have earned, had such amounts been instead invested in the best performing alternative investment in the Plan.

## VII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

2.      Declare that the Defendants, and each of them, have breached their ERISA fiduciary duties to the Plan's participants and beneficiaries;

3.      Issue an order compelling the Defendants to make good to the Plan all losses to the Plan resulting from these breaches, including lost return on investments that would have resulted from prudent and loyal investment of the Plan's assets;

4.      Order equitable restitution and other appropriate equitable monetary relief against the Defendants;

5.      Issue an order granting rescission of the Plan's acquisition of CIGNA stock for more than adequate consideration during the Class Period, and requiring Defendants to restore to the Plan the full value of all contributions used to purchase such stock, plus the return that would have been obtained had the assets been prudently invested in the best performing alternative investment in the Plan;

6.      Award such other equitable or remedial relief as may be appropriate, including the permanent removal of the Defendants from any positions of trust with respect to the Plan and the appointment of independent fiduciaries to administer the Plan;

7.      Enjoin Defendants, and each of them, from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

8.      Order the Defendants or their successor fiduciaries to allocate the Plan's recoveries to the accounts of all Plan participants who had any portion of their account balances invested in the CIGNA Stock Fund maintained by the Plan in proportion to the accounts' losses attributable to the decline in CIGNA stock prices;

9.      Award Plaintiff her attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

10.     Award such other and further relief as the Court deems equitable and just.

DATED this _____ day of February 2003.

                                        Respectfully Submitted By

                                        Samuel R. Simon (SS-8761)
                                        ABRAHAM & ASSOCIATES
                                        604 Washington Square South, Suite 2514
                                        Philadelphia, PA 19106
                                        (215) 627-1887

                                        ABRAHAM & ASSOCIATES
                                        Jeffrey S. Abraham (JA-2946)
                                        One Penn Plaza, Suite 1910
                                        New York, NY 10119
                                        Telephone: (212) 714-2444
                                        Facsimile: (212) 279-3655

                                        KELLER ROHRBACK L.L.P.
                                        Lynn L. Sarko (LS-3700)
                                        Derek W. Loeser (DL-6712)
                                        Elizabeth A. Leland (EL-6149)
                                        1201 Third Avenue, Suite 3200
                                        Seattle, WA 98101-3052
                                        Telephone: (206) 623-1900
                                        Facsimile: (206) 623-3384

                                        KELLER ROHRBACK, P.L.C.
                                        Ron Kilgard (RK-7139)
                                        National Bank Plaza
                                        3101 North Central Avenue, Suite 900
                                        Phoenix, AZ 85012
                                        Telephone: (602) 248-0088
                                        Facsimile: (602) 248-2822

                                        **Counsel for Plaintiff**

N:\CLIENTS\26005\1\PLEADINGS\CIGNACOMPLAINT020303FINAL.DOC